UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARNOLD VICTOR HENRY,                    Case No. 07-14412
                                        Criminal Case No. 03-50048
              Petitioner,

v.                                      Thomas Ludington
                                        United States District Judge

UNITED STATES OF AMERICA,
                                        Michael Hluchaniuk
              Defendant.                United States Magistrate Judge
_____/

**REPORT AND RECOMMENDATION
ON PETITIONER'S MOTION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR CORRECT SENTENCE (Dkt. 111)**

## I.      PROCEDURAL HISTORY

On July 31, 2003, a criminal complaint was filed alleging that petitioner,

Arnold Victor Henry, was in possession of a firearm, in and affecting commerce,

on July 6, 2003, after being convicted of an offense for which the maximum

possible sentence exceeded one year. (Dkt. 1). Petitioner was arrested on August

20, 2003, and provided with an initial appearance on that date. Counsel was

appointed and a detention hearing was held on August 25, 2003, which resulted in

petitioner being detained pending trial. (Dkt. 5). Petitioner was indicted on

September 3, 2003, and charged with the same offense as had been alleged in the complaint. (Dkt. 6).

The trial regarding the charge in the indictment began on November 4, 2003, and ended on November 6, 2003, with petitioner being found guilty of the charge. Trial counsel for petitioner, Kenneth R. Sasse, filed a motion to withdraw on January 7, 2004, stating in the motion that petitioner had accused him of being constitutionally ineffective and a conflict therefore existed with respect to Mr. Sasse's continued representation of petitioner. (Dkt. 31). The motion was granted on January 27, 2003, and another attorney, Richard J. Amberg, was appointed to represent petitioner on February 23, 2004. (Dkt. 35, 41). Numerous motions were filed over the following year and on April 7, 2005, Mr. Amberg filed a motion to withdraw, which was granted the same day. (Dkt. 73, 74).

A third attorney, George C. Bush, was appointed to represent petitioner and the sentencing was scheduled for June 21, 2005. (Dkt. 75, 76). The sentencing took place on June 21, 2005, and the judgment was entered that same day. (Dkt. 81). While several post-trial motions were filed, a notice of appeal (in fact a notice of appeal was filed three times) was filed and petitioner took a direct appeal from this conviction and sentence. (Dkt. 83, 84, 85). Petitioner's conviction and

Report and Recommendation
28 U.S.C. § 2255 Motion
*Henry v. U.S.*; Nos. 03-50048, 0714412

sentence were affirmed by the Court of Appeals in an opinion dated November 15, 2006, which was entered in the district court on November 20, 2006. (Dkt. 101). The Court of Appeals filed its mandate on December 11, 2006, and the mandate was entered in the district court on December 13, 2006. (Dkt. 102).

The above-entitled motion was filed on October 17, 2007. (Dkt. 111). The Government filed a response opposing petitioner's motion (Dkt. 114) and the petitioner filed a reply. (Dkt. 115). On January 10, 2008, Judge Paul V. Gadola referred the case to the undersigned. (Dkt. 116). The case was reassigned from Judge Gadola to District Judge Thomas Ludington on October 28, 2008.

## II.    FACTUAL BACKGROUND

The Court of Appeals opinion in this case includes a comprehensive summary of the underlying facts relating to the offense of conviction and there is no need to repeat the entire summary here. (Dkt. 101). It is sufficient, for purposes of putting these events in context, to describe the offense of conviction as relating to an altercation at a bar during which petitioner was observed firing a handgun. He left the area of the bar and was later stopped by police who found a handgun in the vehicle petitioner was driving. It was this handgun that petitioner was convicted of possessing following prior convictions for felony offenses.

Generally speaking, petitioner's trial strategy consisted of admitting that he had possession of the firearm but also claiming that the gun belonged to someone else and he possessed it only for the reason that he was justified in believing that he was under a threat of death or serious bodily injury and that he had no reasonable alternative other than possessing the firearm. The elements of this "justification" defense were included in the jury instructions provided to the jury at the conclusion of the trial. (Dkt. 34, Tr. Vol. 3, pp. 63-65).

Specific facts relating to issues that have been raised in the present petition require closer examination. In the opening statement of defense counsel he stated, as part of his introductory comments, that petitioner's "name that he uses on his driver's license, tax returns, things of that nature, is not even Arnold Victor Henry, it's Arnold Victor Henry El, the last name being spelled E-l and that's a[n] Islamic name." (Dkt. 33, Tr. Vol. 2, p. 15). Later in the trial when petitioner took the witness stand he gave his name as "Arnold Victor Henry El." (Dkt. 33, Tr. Vol. 2, p. 165).

During his testimony, petitioner stated that a female acquaintance had offered to sell a handgun to a friend of petitioner and had placed the handgun in petitioner's car which was parked outside the bar that he had been in. (Dkt. 34, Tr.

Report and Recommendation
28 U.S.C. § 2255 Motion
*Henry v. U.S.*; Nos. 03-50048, 0714412

Vol. 3, pp. 178-79). Petitioner then stated that three unidentified individuals

approached him and made threatening comments and gestures and, in an attempt

to protect himself, he grabbed the handgun and fired it to scare off these three

individuals. (Dkt. 34, Tr. Vol. 3, pp. 179-80). In the prosecutor's closing

statement, in reference to the events that petitioner had described during his

testimony, the prosecutor made the following comments:

> Did anybody see three guys threatening him? Did
> anybody see him doing anything that would put him in
> well grounded apprehension of death or serious bodily
> injury? No one testified to any such thing. They all saw
> Mr. Henry with the gun in his hand, but they didn't see
> any three white guys around beating him up.
>
> Now let's go back to Mr. Henry's testimony. And
> incidentally there's no evidence in this case that he has
> ever made this statement until he took the stand
> yesterday, no evidence whatsoever.

(Dkt. 34, Tr. Vol. 3, p. 23).

At the conclusion of the prosecutor's closing argument, defense counsel

asked for a sidebar conference and objected to the prosecutor's comments

regarding the petitioner not having made a similar statement prior to his testimony

during the trial as a "comment [on petitioner's] right to remain silent." (Dkt. 34,

Tr. Vol. 2, p. 30). The government's response to the objection included an

acknowledgment that it would be improper to comment on petitioner's right to remain silent but argued that when a criminal defendant does make a statement, in the form of trial testimony, it is "proper comment [to argue] that he hasn't made it to anyone before." (Dkt. 33, Tr. Vol. 2, p. 30). The judge overruled the objection. (Dkt. 33, Tr. Vol. 2, p. 31).

Close to the end of petitioner's direct examination, his attorney asked him about his prior drug related convictions. (Dkt. 33, Tr. Vol. 2, pp. 184-85). This questioning also included a reference to the fact that petitioner was a drug user. *Id*. The first questions asked of petitioner by the prosecutor on cross-examination related to his prior convictions. (Dkt. 33, Tr. Vol. 2, pp. 185-90). While not stated on the record it was clear that these questions were impeachment evidence generally admissible under Federal Rule of Evidence 609. No objection was raised to these questions.

With respect to petitioner's sentencing, a major issue was whether he had the requisite predicate convictions for qualification as an armed career criminal pursuant to 18 U.S.C. § 924(e). Under that statutory provision, a person with three prior qualifying convictions is subject to a statutory mandatory minimum sentence of fifteen years. At the sentencing hearing, which took place on June 21, 2005, the

judge addressed the objections that had been filed by the petitioner. One of those objections dealt with two of the prior convictions that were identified at paragraphs 39 and 41 of the Presentence Report (PSR). One of the offenses was "Attempt Possession Cocaine Less Than 25 Grams" and the other was "Delivery/Manufacture Less Than 50 Grams Cocaine." (PSR, ¶¶ 39, 41). The PSR had scored these offenses separately, for guideline purposes, in that they were separate charges and were given separate, consecutive sentences. Petitioner's objection was that these offenses were "related" within the meaning of U.S.S.G. § 4A1.2(a)(2) and Application Note 3 to that section. The district court ruled they were not "related" offenses and scored them separately. (Dkt. 99, Sent. Tr., pp. 23-24).

A second issue at sentencing related to two convictions for delivery of less than 50 grams of cocaine in Kalamazoo County. These convictions resulted in a sentencing on June 17, 1999. (PSR, ¶ 51). The sentences were imposed for offenses committed on July 9, 1998 and July 11, 1998. (PSR, ¶ 53). These offenses were treated as "related" offenses, for guideline purposes, and scored as a single offense. (PSR, ¶ 51).

Also considered at sentencing was the petitioner's status under the Armed Career Criminal Act (ACCA). 18 U.S.C. § 924(e). In order to qualify for such status a person must have three previous convictions for either a "violent felony" or a "serious drug offense" that were "committed on occasions different from one another." *Id.* A state drug offense is defined as a "serious" offense if it involves "manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance" and has a potential sentence of at least ten years. 18 U.S.C. § 924(e)(2)(A)(ii). The sentencing judge determined that the delivery of less than 50 grams of cocaine conviction for which petitioner was sentenced on December 12, 1990, (PSR, ¶ 41) and both convictions for delivery of delivery of less than 50 grams of cocaine for which petitioner was sentenced on June 17, 1999, were proper predicates for the ACCA. (PSR, ¶ 51). This determination subjected petitioner to a 15 year statutory mandatory minimum and life maximum sentence.

The sentencing judge ultimately determined that the sentencing guideline range petitioner faced was 235-293 months. (Dkt. 99, Sent. Tr., p. 61). After weighing the options and considering the arguments of counsel as well as the

Report and Recommendation
28 U.S.C. § 2255 Motion
*Henry v. U.S.*; Nos. 03-50048, 0714412

statement of petitioner, the judge varied from the guideline range and imposed a sentence of 180 months. (Dkt. 99, Sent. Tr., p. 64).

Petitioner filed a direct appeal from his conviction and sentence. In the direct appeal, petitioner argued (1) ineffective assistance of counsel, (2) evidentiary claims involving (a) admission of evidence of his prior convictions and (b) evidence of a defense witness's use of marihuana in petitioner's presence, and (3) prosecutorial misconduct claims involving (a) comments made by the prosecutor during cross-examination of petitioner regarding another witness, (b) comments made by the prosecutor during closing argument regarding petitioner not telling anyone before trial the same story he gave during his testimony at trial and (c) comments made by the prosecutor during closing argument regarding other people at the bar not seeing the events described by petitioner. The Court of Appeals declined to consider the ineffective assistance of counsel claims, based on court policy, and ruled against petitioner on the other claims.

In the present petition, petitioner makes a number of claims that are based on the theme of ineffective assistance of counsel. (Dkt. 111). Those claims include allegations that his defense attorney (1) did not develop a defense, (2) did not provide relevant facts for sentencing, (3) did not file basic motions, (4) failed

Report and Recommendation
28 U.S.C. § 2255 Motion
*Henry v. U.S.*; Nos. 03-50048, 0714412

to produce "factual information" relating to his criminal history that resulted in his sentence under the ACCA, (5) failed to object to certain conduct by the prosecutor, (6) told the jury petitioner was a Muslim and (7) admitted evidence relating to petitioner's prior drug use.  (Dkt. 111).

In response, the government contends (1) that petitioner's claims that certain aspects of his ACCA status should have been submitted to a jury are not supported by the law, (2) that arguments relating to the application of the sentencing guidelines are not relevant in that petitioner was sentenced to a statutory minimum sentence, (3) that the ACCA was properly applied to petitioner, (4) that petitioner's defense attorney did not call him a Muslim and any reference to petitioner having an "Islamic" name did not prejudice petitioner, (5) that offering evidence of petitioner's drug usage was a strategic decision and (6) that the Court of Appeals has ruled that none of the claims of prosecutorial misconduct had merit.  (Dkt. 114).

Petitioner replied to the government response and supplemented his claims by claiming (1) that ACCA issues should have been decided by a jury, (2) that sentencing guideline principles are relevant to determining whether prior convictions are proper ACCA predicate convictions, (3) that evidence of his prior

convictions was improperly offered by his defense attorney, and (4) that his defense attorney's reference to petitioner's name being "Islamic" was improper and caused him prejudice. (Dkt. 115).

## III.  DISCUSSION

### A.  Standards of Review

#### 1.  Law governing § 2255 motions

In order to prevail on a § 2255 motion, a petitioner must show a "'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. U.S., 21 F.3d 107, 109 (6th Cir. 1994)*. A § 2255 motion is not a substitute for a direct appeal. When a petitioner raises a claim under § 2255 that he failed to raise at the appellate level, a court is generally precluded from reviewing the merits of such a claim unless a petitioner can show: (1) cause for his failure to raise the claim earlier in a direct appeal; and (2) actual prejudice stemming from the alleged violation. *Reed v. Farley, 512 U.S. 339, 354-55 (1994)*. However, the Sixth Circuit has held that a post-conviction motion under § 2255 is the proper vehicle for raising claims of ineffective assistance of counsel in the first instance. *U.S. v. Crowe, 291 F.3d 884, 886 (6th Cir. 2002)* (citing *U.S. v. Wunder, 919 F.2d 34, 37*

(6th Cir. 1990)). At sentencing, a prior conviction is "presumptively valid and may be used to enhance the federal sentence." *Daniels v. U.S.*, 532 U.S. 374, 382 (2001). Similarly, a "[d]efendant has the burden of proof [to challenge the validity of a prior conviction used to enhance a sentence] in 2255 proceedings." *U.S. v. Otero*, 2005 WL 1677895, *3 (M.D. Pa. 2005) (internal citation omitted) (citing *Langston v. U.S.*, 105 F. Supp. 2d 419, 422 (E.D. Pa. 2005) (challenging validity of state conviction used for federal sentencing enhancement)).

      2.     Law governing ineffective assistance of counsel claims

Claims of ineffective assistance of counsel are governed by the U.S. Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court enunciated a two-prong test that must be satisfied to prevail on an ineffective assistance of counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id.* at 688. "Constitutionally effective counsel must develop trial strategy in the true sense – not what bears a false label of 'strategy' – based on what investigation reveals witnesses will actually testify to, not based on what counsel guesses they might say in the absence of a full investigation." *Ramonez v. Berghuis*, 490 F.3d 482, 489 (6th Cir. 2007). Second, the movant

must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable. *Strickland*, 466 U.S. at 688. It is not enough to show that the alleged error "had some conceivable effect on the outcome of the proceeding." *Id.* Rather, the movant must show that, but for counsel's errors, the result would have been favorably different. *Id.* at 693. Failure to make the required showing under either prong of the *Strickland* test defeats the claim. *Id.* at 700.

The Supreme Court has explained that "[t]he essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). This language highlights the Supreme Court's consistent view that the Sixth Amendment right to counsel is a safeguard to ensure fairness in the trial process.

In *Lockhart v. Fretwell*, 506 U.S. 364 (1993), the Court clarified the meaning of "prejudice" under the *Strickland* standard, explaining:

> Under our decisions, a criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." . . . Thus, an analysis focusing solely on the mere outcome determination, without

attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.

*Lockhart*, 506 U.S. at 369 (citations omitted).

    B.    <u>Sixth Amendment Right to Jury Determination of Facts Under ACCA</u>.

Petitioner claims ineffective assistance of counsel regarding factual issues that are relevant to the determination of whether he came within the provisions of the ACCA and that his Sixth Amendment rights were violated as a result of the conduct of his defense attorney at sentencing as well as his appellate attorney. Petitioner's attorney, at the time of sentencing, did make an argument that petitioner had a right to a jury determination of certain factual questions relating to ACCA status but petitioner's appellate attorney did not make a similar argument in the direct appeal. The government contends that there is no Sixth Amendment right to a jury determination of these issues and therefore petitioner's ineffective assistance of counsel claim must fail.

In *Almendarez-Torres v. U.S.*, 523 U.S. 224 (1998) the Supreme Count reviewed the federal sentencing scheme associated with a conviction under 8 U.S.C. § 1326(a). That statute created a criminal offense for an illegal alien who re-enters the United States after deportation and without permission of the

government.  The penalty for a conviction of that offense was up to two years

imprisonment except where the defendant had been convicted of an "aggravated

felony" in which case the maximum possible sentence increased to twenty years.

The Court concluded that the defendant had no right to a jury determination of

whether he had been convicted of an "aggravated felony."  *Id.* at 246-48.  Two

years later the Supreme Count decided *Apprendi v. New Jersey*, 530 U.S. 466,

488-90 (2000) and stated, citing *Almendarez-Torres*, that factors that increased a

statutory maximum sentence, except for prior convictions, must be determined by

a jury.  In 2005, the Supreme Court invalidated the mandatory aspect of the federal

sentencing guidelines but again noted the exception for prior convictions in

sentencing proceedings by ruling that any fact, other than a prior conviction, that

supports a sentence that would exceed the maximum established by a guilty plea

must be admitted or proven to a jury.  *U.S. v. Booker*, 543 U.S. 220, 244 (2005).

      After *Apprendi* but before *Booker*, the Sixth Circuit examined the ACCA

and considered, among other issues, whether the "different occasions" requirement

of the ACCA came within the prior conviction exception stated in *Almendarez-*

*Torres* and affirmed in *Apprendi*.  *See U.S. v. Burgin*, 388 F.3d 177, 186 (6th Cir.

2004).  In *Burgin*, the Court concluded that the question of whether prior

convictions exist is "intimately related" to the question of whether the convictions were committed on "different occasions" and, therefore, such an aspect of the defendant's criminal history came within the prior conviction exception and did not have to be proved to a jury. Following *Booker*, the Sixth Circuit confirmed its interpretation of the prior conviction exception and upheld a sentence under the ACCA stating that the "nature or character of prior convictions" as defined by the ACCA should be determined by the judge and not a jury. *U.S. v. Barnett*, 398 F.3d 516, 524 (6th Cir. 2005). *See also U.S. v. Hill*, 440 F.3d 292, 298 (6th Cir. 2005) (determination of whether prior offense was committed on different occasion from other offense for judge and not jury). Questions regarding the "nature" of a prior conviction would include whether it was a "serious" drug offense and whether it was committed on a different occasion than some other prior conviction.

The significance of these cases in relation to petitioner's argument claiming ineffective assistance of counsel is that, regardless of what issues were or could have been raised by trial or appellate counsel, petitioner was not prejudiced because he plainly had no Sixth Amendment right to have questions relating to his

ACCA status submitted to a jury, and any challenge based on that argument would have failed.

    C.    <u>ACCA Sentencing Issues</u>

Petitioner also claims ineffective assistance of counsel relating to trial counsel's failure to investigate and provide unspecified information that allegedly would have had a bearing on petitioner's sentencing under the ACCA. Petitioner's claim that new information he has provided as attachments to his petition would have changed the decision of the trial judge are unfounded.  A part of petitioner's claim is that the prior convictions were not "serious drug offenses" within the meaning of [18 U.S.C. § 924(e)(2)(A)(ii)](#) because they involved small amounts of drugs.  The quantity of drugs involved in petitioner's prior convictions is irrelevant to the question of whether they are "serious" within the meaning of the statute.  The statute requires that the offenses involve manufacturing, distributing, or possessing with the intent to manufacture or distribute <u>and</u> that the maximum term of imprisonment is ten years or more.  [18 U.S.C. § 924(e)(2)(A)(ii)](#).  The sentencing transcript indicates that there was no contest over whether the three offenses that qualified petitioner for ACCA status had maximum possible sentences that exceeded one year and petitioner does not

challenge that fact in his petition. Based on that standard, petitioner's prior

convictions were "serious drug offenses" and no information that petitioner has

offered, or suggested his attorney could have obtained, would change that finding.

Again, petitioner has not demonstrated that he was prejudiced by his attorney's

alleged failure to produce any information for sentencing and, therefore, he has not

shown that his attorney provided constitutionally ineffective assistance. Issues

raised by petitioner that relate to the application of the Sentencing Guidelines are

completely academic given that petitioner was sentenced to the statutory

mandatory minimum sentence under the ACCA.

D.     Prosecutorial Misconduct

Petitioner also accuses his trial counsel of being constitutionally ineffective

for not objecting to several instances of what petitioner claims were prosecutorial

misconduct. Specifically, petitioner claims that his attorney failed to object when

the prosecutor (1) commented on petitioner's post-arrest silence, (2) commented

on petitioner's failure to call witnesses, and (3) vouched for witnesses by stating

that the government had met its burden of proof. (Dkt. 111, p. 18).

All claims of prosecutorial misconduct were raised on direct appeal. In his

closing argument Assistant United States Attorney Robert Haviland argued to the

jury that there was "no evidence in this case that [petitioner] has ever made this statement until he took the stand yesterday." (Dkt. 34, Tr. Vol. 3, p. 23). This was a comment relating to petitioner's testimony at trial that he only possessed the handgun to protect himself from three individuals who were threatening him. Petitioner claims this was a comment on his post-arrest silence. In ruling on a related claim in the direct appeal, the Court of Appeals noted that *Doyle v. Ohio, 426 U.S. 610, 619 (1976)* found that it was improper for a prosecutor to cross examine a defendant about his failure to make a statement to arresting officers after he had received Miranda warnings. In finding the comments in closing argument in the present case to be proper, the Court pointed out that there was no reference to an interrogation by police and that it was clear from the context of the statement that petitioner had not previously made this claim to *any* witness. This distinction from the *Doyle* case was significant to the conclusion of the Court that no error had taken place. Further, contrary to the assertion of petitioner, his trial counsel did object, unsuccessfully, to the comment by the prosecutor. (Dkt. 34, Tr. Vol. 3, p. 30). Petitioner's reliance on *Gravely v. Mills*, 87 F.3d 779 (6th Cir. 1996) in support of this argument is misplaced. In *Gravely*, the defense attorney failed to object when the prosecutor offered substantive evidence of the

defendant's failure to make a statement to police after being advised of his right to

remain silent and also failed to object when the prosecutor cross-examined the

defendant about his failure to make a statement under those same circumstances.

*Id*. at 787.  While the Sixth Circuit concluded that such conduct by the defense

attorney was constitutionally ineffective, those circumstances are easily

distinguishable from the present case where no specific reference was made to

petitioner's post-arrest silence.

Petitioner also argues that the prosecutor improperly commented on his

failure to call witnesses to support his claims during the trial.  (Dkt. 111, p. 18).

Petitioner cites no authority for this contention and does not identify a specific

comment made by the prosecutor to support this argument.  In the direct appeal

petitioner objected to the following comment by the prosecutor:

> This was a crowded parking lot.  There were at least 12
> or 15 people and probably more like 25 or 40 people
> there.  And no one - no one saw this fight except Mr.
> Henry.  No one saw him being confronted.  No one even
> - there is no testimony that anybody even called him a
> racist epitaph [sic], none.  Nobody heard him confronted,
> poked, in any way intimidated that night except Mr.
> Henry himself.  There is no support except his own
> testimony.

(Dkt. 34, Tr. Vol. 3, p. 29).  The Court of Appeals ruled that, when this comment

was read in conjunction with another portion of the government's closing

argument, it was not objectionable and only amounted to a comment  on the lack

of evidence supporting the petitioner's theory, which was proper for the

government to do.  *U.S. v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005).

     Petitioner further submitted that his counsel was ineffective because he

failed to object when the prosecutor "vouched for witnesses."  (Dkt. 111, p. 18).

Petitioner does not identify a portion of the record where he contends that the

prosecutor "vouched" for a witness and does not cite any authority for this

argument.  Improper vouching occurs when a prosecutor either (1) states a

personal belief in a witness's credibility or (2) implies that the witness's testimony

is corroborated by evidence known to the government but not known to the jury.

*U.S. v. Henry*, 545 F.3d 367, 378-79 (6th Cir. 2008).  A related concept,

bolstering, occurs when the prosecutor implies that the witness's testimony is

corroborated by evidence known to the government but not known to the jury.

*U.S. v. Francis*, 170 F.3d 546, 551 (6th Cir. 1999).  In his direct appeal, the Court

of Appeals considered the "bolstering" claim made by petitioner regarding the

portion of the government's closing argument, identified earlier, that petitioner

had claimed also constituted an improper comment on petitioner's failure to call witnesses.  In considering this issue in the context of the bolstering claim, the Court said that the "statement did not suggest that the government knew anything that the jury did not" and then quoted from a portion of the government's closing argument (Dkt. 34, Tr. Vol. 3, p. 21) where the prosecutor said to the jury "I don't know anything more about this case than you do" and "I'm not telling you what I think you should do based on anything other than the testimony that you heard here in [c]ourt."  (Dkt. 101, pp. 11-12).  The Court of Appeals found no improper bolstering based on these comments by the prosecutor.  *Id*.

The above-noted claims of prosecutorial misconduct were found to be meritless by the Court of Appeals and where the Court of Appeals has addressed an issue on direct appeal of the criminal conviction that issue cannot be relitigated in a § 2255 petition absent highly exceptional circumstances.  *DuPont v. U.S.*, 76 F.3d 108, 110 (6th Cir. 1996).  Therefore, any claim of ineffective assistance of counsel premised on the failure to object to these comments does not represent a *Strickland* situation of ineffective assistance of counsel because petitioner would not have been prejudiced in that any objection would have been properly overruled.

E.    Defense Attorney Comment Regarding Petitioner's Islamic Name

In his opening statement, petitioner's counsel stated that petitioner used the name "Arnold Victor Henry El" on his driver's license, rather than simply Arnold Victor Henry, and also characterized petitioner's name as an Islamic name.  (Dkt. 33, Tr. Vol. 2, p. 15).  When petitioner took the stand, he identified himself as "Arnold Victor Henry El."  (Dkt. 33, Tr. Vol. 2, 165).  Petitioner claims that this was ineffective assistance of counsel because saying that he had an Islamic name was equivalent to saying he was Muslim which, as petitioner sees it, was the equivalent of referring to him as a terrorist in November of 2003 when the "United States was in a newly declared war against terrorism."  (Dkt. 1, pp. 18-19).  Petitioner claims that there was no logical reason for his attorney to make that statement and none is apparent from the record with the exception of providing an explanation to the jury of what may have been an unusual name when the "El" portion was included, as it was when petitioner identified himself at the beginning of his testimony.  No further mention, directly or indirectly, was made during the trial by the prosecution or the defense.

As noted earlier, in order to establish, under *Strickland*, that he was denied constitutionally effective assistance of counsel, petitioner must show a

performance deficiency and prejudice arising from that deficiency. Prejudice, in this context, means an error that was so serious that he was denied a fair trial. Petitioner's contention that referring to his name as being "Islamic" is the functional equivalent of calling him a terrorist is greatly exaggerated and it strains common sense to think that a reasonable juror would come to that conclusion based only on the single reference to petitioner's name being Islamic. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. * * * The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 693-94. If it were error for petitioner's trial counsel to describe his name as Islamic, the effect of that is no more than the "some conceivable effect" and clearly does not rise to the level of "reasonable probability" that the result would have been different. Thus, petitioner has not demonstrated that he was prejudiced by the conduct of his counsel in this regard.

Report and Recommendation
28 U.S.C. § 2255 Motion
*Henry v. U.S.*; Nos. 03-50048, 0714412

F.    Evidence of Prior Criminal Record

Near the conclusion of his direct testimony, petitioner's counsel asked him a series of questions relating to past drug use and the fact that he had convictions for "sales or distributing, or possession of drugs with intent to distribute." (Dkt. 33, Tr. Vol. 2, pp. 184-85). The first series of questions on cross-examination by the prosecutor related to petitioner's prior convictions for drug offenses in Ingham County and Kalamazoo County. (Dkt. 33, Tr. Vol. 2, pp. 185-90). Petitioner attempted to explain these convictions on cross-examination by asserting that he was a "substance abuser ... a cocaine addict." (Dkt. 33, Tr. Vol. 2, p. 189). While not articulated on the record, the questions of the prosecutor relating to this topic are standard impeachment by evidence of prior felony convictions allowed under Federal Rule of Evidence 609. Petitioner alleges that the questions asked by his trial attorney relating to prior drug use and to prior convictions constituted ineffective assistance of counsel. He further alleges that the introduction of this evidence "either prompted (and/or provided a foundation for) the prosecution to cross-examine the defendant concerning his character as to drug useage and unrelated cocaine delivery convictions." (Dkt. 111, p. 19).

While petitioner asserts that the introduction of this evidence could not have been trial strategy, experience strongly indicates that the introduction of this type of evidence is a very common trial strategy. Defendants who take the stand in criminal cases are subject to the same cross-examination just like any other witness. *U.S. v. Seltzer*, 794 F.2d 1114, 1122 (6th Cir. 1986). When petitioner testified in his criminal trial, he was subject to impeachment under Rule 609 by the introduction of evidence of certain prior felony convictions. Defense counsel, knowing that petitioner was subject to this type of cross-examination could, and normally would, introduce the evidence on direct examination under the theory that offering it during the direct examination will lessen the negative effect the evidence will have. *U.S. v. Modena*, 302 F.3d 626, 632 (6th Cir. 2002) (proper to introduce evidence of prior conviction on direct exam to "remove the sting" of impeachment); *U.S. v. Townsend*, 796 F.2d 158, 162 (6th Cir. 1986) (proper to allow impeachment evidence to be brought out on direct in anticipation of cross-examination). Under the *Strickland* standards, the court's "scrutiny of counsel's performance must be highly deferential" and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that,

under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689.  Given the deferential standard that is to be applied to claims of ineffective assistance of counsel, and the "strong presumption" of "sound trial strategy," petitioner has not shown that his counsel's conduct in introducing evidence of prior drug use and prior convictions, in apparent anticipation of the cross-examination, fell below an objective standard of reasonableness.  On direct appeal of the criminal conviction, the Court of Appeals concluded that the government's questions of petitioner on cross-examination relating to his prior felony convictions were "within the parameters of [Fed.R.Evid. 609(a)(1)]," which confirmed the propriety of the defense attorney's strategy to mention then on direct examination.

G.    General Claims of Ineffective Assistance

Additionally, petitioner makes several general claims of ineffective assistance of counsel including allegations that counsel (1) failed to investigate the facts relating to the sentencing, (2) failed to file motions and (3) failed to develop a defense.  These allegations are merely conclusions, not facts, and therefore no hearing is necessary to determine that petitioner is not entitled to relief based on these allegations. *Arredondo v. U.S.*, 178 F.3d 778, 782 (6th Cir. 1999).

## IV.   RECOMMENDATION

Accordingly, the undersigned concludes that, based on the existing record, petitioner has not demonstrated that he was denied constitutionally effective assistance of counsel during the trial or on direct appeal and **RECOMMENDS** that petitioner's motion, therefore, be denied.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Within 10 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response must not exceed 20 pages in

Report and Recommendation
28 U.S.C. § 2255 Motion
*Henry v. U.S.*; Nos. 03-50048, 0714412

length unless such page limit is extended by the Court. The response must address specifically, and in the same order raised, each issue contained within the objections by motion and order. If the Court determines any objections are without merit, it may rule without awaiting the response to the objections.

s/Michael Hluchaniuk

Date: December 8, 2008

Michael Hluchaniuk
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on December 8, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: Robert Haviland, George C. Bush, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Arnold Victor Henry, ID # 31101-039, FCI Florence, Post Office Box 6000, Florence, CO 81226.

s/James P. Peltier

Courtroom Deputy Clerk
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7850
pete_peltier@mied.uscourts.gov